[Docket No. 8]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

DEON BROWN,

      Plaintiff,

v.

CREDIT ONE BANK,

      Defendant.

Civil No. 23-23008 (RMB-MJS)

**OPINION**

**APPEARANCES**

Deon Brown
21 E. Third St.
Burlington, NJ 08016

    *Pro se Plaintiff*

MCGUIRE WOODS LLP
Shan P. Massand
1251 Avenue of the Americas, 20th Floor
New York, NY 10020

    *Attorney for Defendant Credit One Bank, N.A.*

**RENÉE MARIE BUMB, Chief United States District Judge**

This matter comes before the Court upon a Motion to Dismiss or, in the Alternative, to Compel Arbitration (the "**Motion**") filed by Defendant Credit One Bank, N.A. ("**Defendant**" or "**Credit One**"). [Docket No. 8.] *Pro se* Plaintiff Deon Brown ("**Plaintiff**" or "**Brown**") opposes the Motion. [Docket No. 9.] Credit One submitted a reply brief in further support of its Motion. [Docket No. 10.] Pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b), the Court did not hear oral argument. For the reasons set forth below, the Court will **COMPEL ARBITRATION** of Plaintiff's claims, in part, **DISMISS** the Complaint, in part, and **STAY** proceedings pending arbitration.

**I.    FACTUAL BACKGROUND**

**A.    Credit One Refuses to Accept Plaintiff's Purported Legal Tender**

Mr. Brown filed this action *pro se* alleging that Credit One breached its contractual and fiduciary duties and violated federal law[1] by refusing to accept Mr. Brown's "legal tender" to pay his credit card bill and by closing his credit card accounts. [*See* Docket No. 1 ("**Compl**.") at 2–3.] The "legal tender" took the form of Mr. Brown mailing his monthly billing statement for his Credit-One issued Visa credit card back to Credit One with the words "Pay to Bearer" and "Accepted for Deposit"

---

[1] Plaintiff alleges violations of various federal statutes including the Fair Credit Billing Act, which requires creditors to timely accept credit payments made by consumers. [Docket No. 1 at 2 (citing 15 U.S.C. § 1666c).]

2

written on the statement, as well as writing out the $17.68 amount due as if he was sending Credit One a personal check. [Docket No. 9 ("**Pl.'s Br.**"), Ex. A at 3–4.]

Credit One rejected Mr. Brown's attempted payment. In a letter to Mr. Brown, Credit One informed him that the attempted payment "[did] not constitute legal tender" submitted through a "valid financial instrument[]" and appeared to be "part of a scheme to eliminate [] debt" that the United States Office of the Comptroller of the Currency warned has "no substance in law or finance." [Pl.'s Br., Ex. E at 2 (citing *Debt Elimination Fraud: Fraudulent Debt Elimination Schemes*, OFFICE OF THE COMPTROLLER OF CURRENCY, Alert 2007-55 (Sept. 5, 2007)), https://www.occ.treas.gov/news-issuances/alerts/2007/alert-2007-55.html).][2] Credit One found that Plaintiff was in default of his card agreement by submitting the attempted payment because, according to the Card Agreement, "payments must be

---

[2] Specifically, this scheme purports to offer borrowers a method to eliminate their debts by making out a "fictitious U.S. government financial instrument," in an attempt to satisfy the debt under an illegitimate legal theory based on misreading of U.S. financial laws. *Debt Elimination Fraud: Fraudulent Debt Elimination Schemes*, OFFICE OF THE COMPTROLLER OF CURRENCY, Alert 2007-55 (Sept. 5, 2007), https://www.occ.treas.gov/news-issuances/alerts/2007/alert-2007-55.html. The theory is "that Credit One could have recovered the [credit card] balance owed … from an imaginary account with the United States Treasury" via an invalid self-constructed instrument, "thereby allowing him to discharge his credit card debt." Docket No. 10 ("**Reply Br**.") at 5.] These schemes are often promoted by organizations purporting to assist debtors in eliminating mortgage and consumer debt. *See* OFFICE OF THE COMPTROLLER OF CURRENCY, *supra*; *see also Illegal Financial Activity: Fictitious Debt Elimination Schemes*, OFFICE OF THE COMPTROLLER OF CURRENCY, Alert 2003-12 (Oct. 1, 2023), https://www.occ.gov/news-issuances/alerts/2003/alert-2003-12.html.

made in U.S. dollars, in funds on deposit in the U.S." [Pl.'s Br., Ex. E.] Accordingly, Credit One closed Plaintiff's account. [*Id.*]

The same day that Credit One closed Plaintiff's Visa card, Plaintiff opened a new account for a Credit One-issued American Express credit card. [*See* Docket No. 8-5 Declaration of Steven Dasch ("**Dasch Decl**.") ¶ 13.] Credit One closed the American Express card account a few days later because Credit One "identified unusual activity on [his] other account [*i.e.*, the Visa account]." [Pl.'s Br., Ex. F.]

### B. The Card Agreements and the Arbitration Clauses

The contracts governing the terms and conditions of the Visa and American Express cards are nearly identical. [Dasch Decl., Ex. C ("**Visa Card Agreement**"), Ex. G ("**American Express Card Agreement**").] Two provisions of the Card Agreements are relevant here. *First*, to accept either Card Agreement, Plaintiff had to use the credit card associated with the account by incurring charges. [Visa Card Agreement at 2 ("You accept this Agreement when you use the Account. …Account means the Credit One Bank card account under this Agreement."); American Express Card Agreement at 2 (same).] *Second*, both Card Agreements contain identical arbitration agreements requiring that "any controversies or disputes arising from or relating in any way to your [credit card account]" or "any transactions involving you're [a]ccount" be submitted to "mandatory, binding arbitration." [Visa Card Agreement at 6; American Express Card Agreement at 6.] The Card Agreements permitted Plaintiff to reject the agreement to arbitrate but only upon "written notice of rejection" mailed to Credit

4

One within 45 days. [*Id.*] Additionally, the arbitration agreements included survival clauses providing that the agreements would "survive changes in the [Card] Agreement[s] and termination of the [a]ccount[s]." [*Id.*]

## II. PROCEDURAL BACKGROUND

Although Plaintiff alleged that Credit One "breached [its] contract agreement," by closing his accounts, [Compl. at 3], he did not attach a copy of either Card Agreement to his Complaint.[3] Defendant moved to compel arbitration and attached both Card Agreements as exhibits to its Motion. [*See* Dasch Decl., Exs. C & G.] Plaintiff opposed, arguing that the Court should not compel arbitration because he never activated or used the American Express card prior to Credit One closing his account and therefore, he did not accept that card agreement. [Pl.'s Bt. at 1, 3.] He does not deny that he accepted the Visa Card Agreement by making purchases on his Credit One-issued Visa card. Plaintiff also argues that the arbitration provisions are "misleading and deceptive" and "buried deep into the agreement." [*Id.*] Credit One filed a reply brief in further support of its Motion arguing that there is no dispute that Plaintiff agreed to arbitrate pursuant to the Visa Cardholder Agreement because he accepted the terms and conditions of the Agreement by making purchases on his Visa card. [Reply Br. at 1–2.] Credit One does not deny that it closed Plaintiff's American Express card before he made any purchases on it but argues that questions about whether Plaintiff accepted the terms of the American Express Card Agreement and its

---

[3] Plaintiff attached one Card Agreement to his opposition papers, but it is unclear if the agreement is for the Visa card or the American Express card.

5

arbitration provision are issues of arbitrability to be decided by the arbitrator. [*Id.* at 1–2.][4]

## III. LEGAL STANDARD

The Federal Arbitration Act (the "**FAA**") "reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). "Before compelling arbitration pursuant to the FAA, a court must determine that: '(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of the agreement.'" *Dorset v. United Healthcare Servs., Inc.*, 2024 WL 3325977, at *2 (D.N.J. Jul. 8, 2024) (quoting *Kirleis*, 560 F.3d at 160). "[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," a court must order the parties to proceed with arbitration. 9 U.S.C. § 4. But "[i]f a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999). "The party resisting arbitration

---

[4] Plaintiff also submitted an unauthorized sur-reply, [Docket No. 11], which the Court will not consider. *Mattern v. City of Sea Isle*, 131 F. Supp. 3d 305, 312 (D.N.J. 2015), *aff'd*, 657 F. App'x 134 (3d Cir. 2016) (disregarding sur-reply where plaintiffs did not seek leave of Court and where defendants' reply brief did not raise any new issues that would necessitate a response); *Morris v. Verniero*, 2008 WL 1790433, at *1 n.1 (D.N.J. Apr. 18, 2008) ("[B]ecause Plaintiff did not seek leave from the Court before filing his Sur–Reply, as he was required to do pursuant to Local Civil Rule 7.1(d)(6), the Court will strike the Sur–Reply and declines to consider it.").

bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

"[W]hen it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.'"[5] *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (quoting *Somerset Consulting, LLC V. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). "But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then 'the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question'" under a Rule 56 summary judgment standard. *Id.* (quoting *Somerset*, 832 F. Supp. 2d at 776). "In short, discovery addressing a motion to compel

---

[5] Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint if the plaintiff fails to state a claim upon which relief may be granted. "A court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014). Courts will dismiss a complaint if the plaintiff has not pled "enough facts to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts will not accept "legal conclusions" as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

7

arbitration is unnecessary when no factual dispute exists as to the existence or scope of the arbitration agreement." *Young v. Experian Info. Sols., Inc.*, --- F.4th ----, 2024 WL 4509767, at *5 (3d Cir. Oct. 17, 2024).

"An arbitration clause may be deemed 'apparent' even when a 'contract[], though not appended to the Complaint, [is] integral to, and referenced in, the Complaint.'" *Lawson v. City of Philadelphia*, 2019 WL 934976, at *2 (E.D. Pa. Feb. 25, 2019) (quoting *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 168 n.2 (3d Cir. 2014) (alterations in original)). So if an arbitration clause "appears in a contract relied upon in the Complaint" the Court may "resolve the motion to compel arbitration under a motion to dismiss standard[.]" *Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117–18 (3d Cir. 2015).

### IV.   DISCUSSION

#### A.   Formation of the American Express Card Agreement

Arbitration agreements are usually part of a larger "container contract" which governs the parties' contractual relationship as a whole. "Because an arbitration clause is severable from [the container contract], questions about the validity of the container contract [are usually for the arbitrator]." *Carrone v. UnitedHealth Grp. Inc*, 2021 WL 3520809, at *1 (3d Cir. Aug. 11, 2021) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967)). But not always. Courts, not arbitrators, decide questions over the *formation* of the container contract, "namely the element of mutual assent." *MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974

8

F.3d 386, 397 (3d Cir. 2020); *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 104 (3d Cir. 2000) (holding that Section 4 of the FAA requires courts to "pass[] judgment on the formation or existence of the container contract"). That is because a claim that the container contract lacked mutual assent necessarily puts the existence of the arbitration agreement at issue. *Sandvik*, 220 F.3d at 106 ("[T]hough arbitration clauses are severable from their larger contracts, the question whether the underlying contract contains a valid arbitration clause still precedes all others."). So, in other words, if there is no container contract because the parties lacked mutual assent, then that also means that there was no agreement to arbitrate. *MZM*, 974 F.3d at 400 ("Lack of assent to the container contract necessarily implicates the status of the arbitration agreement, when the container contract and the arbitration provision depend on the same act for their legal effect."); *China Minmetals Materials Import & Export Co. v. Chi Mei Corp.*, 334 F.3d 274, 288 (3d Cir. 2003) ("[A] contract cannot give an arbitral body any power ... if the parties never entered into [the contract]."); *Robbins v. Playhouse Lounge*, 2021 WL 2525709, at *6 (D.N.J. June 21, 2021) ("[W]hen the formation of the container contract itself is in issue, the Court must resolve the dispute, as it calls into question the existence of the arbitration agreement in the first place.").[6]

---

[6] Defendant argues that whether there was mutual assent to the American Express Agreement is "an issue of arbitrability for the arbitrator to decide." [Def.'s Reply at 2.] That is not right. True, both arbitration agreements at issue here contain delegation clauses providing that the arbitrator may determine the "validity, enforceability, coverage, meaning, or scope of [the] agreement[s] to arbitrate." [American Express Card Agreement at 6.] But that provision does not permit the arbitrator to decide *formation* issues regarding the *container contract*. *MZM*, 974 F.3d at 392. And even if there was such a provision in the Card Agreement itself, it would not be valid. Parties

9

The American Express Card Agreement details how Plaintiff could accept its terms and conditions. It provides that:

> **Accepting this Agreement:** You accept this Agreement when you use the Account. You may still reject this Agreement if you have not yet used the Card, used the Account, or paid a fee after receiving a billing statement.

[Pl.'s Br., Ex. D; American Express Card Agreement.] Plaintiff has put the formation of only the American Express Card Agreement at issue by arguing that, because he never activated or used his American Express Card, he never accepted the American Express Card Agreement and its arbitration provision. Defendant does not dispute that Plaintiff never used or activated his American Express Card. [Def.'s Reply at 3.]

Plaintiff's argument is too clever by half. As Credit One explains, if Plaintiff never accepted the terms and conditions of the American Express Card Agreement, he has no claims arising out of the American Express Card Agreement. [Def.'s Reply at 3–4.] That includes each claim in his Complaint, including any claim that Credit One unlawfully terminated the American Express Card Agreement. *See Gabel v. Manetto*, 427 A.2d 71, 73 (N.J. App. Div. 1981) (offer may be revoked at any time before acceptance upon notice by the offeror to the offeree); [Pl.'s Br., Ex. G at 3 (notifying Plaintiff of revocation of American Express Card Agreement offer).] So, although the Court cannot compel arbitration under the American Express Card Agreement because, as Defendant admits, Plaintiff never accepted that Agreement,

---

can delegate questions about the formation of a container contract to the arbitrator, but it must be so delegated in a written contract whose formation is *not* in issue. *Id.*

[Def.'s Reply at 3], the Court will **DISMISS** all of Plaintiff's claims arising out of the American Express Card Agreement for failure to state a claim. *Cf. Animal Science Products, Inc. v. China Minmetals Corp.*, 34 F. Supp. 3d 465, 524 (D.N.J. 2014) (dismissing antitrust complaint without prejudice due to lack of standing, and consequently dismissing motion to compel arbitration of antitrust claims as moot).[7] The remainder of the Court's analysis considers only whether it can compel arbitration under the Visa Card Agreement.

> **B.    The Court Will Consider the Visa Card Agreement Attached to Defendant's Motion and Assess Credit One's Motion to Compel Under Rule 12(b)(6)**

Although Mr. Brown did not attach the Visa Card Agreement to his Complaint, the Court can still consider Credit One's Motion under a Rule 12(b)(6) standard rather than a Rule 56 standard. It is apparent based on the documents referenced in and integral to the Complaint that Plaintiff's claims are premised on a contractual agreement unmistakably containing an arbitration clause. "[W]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Lloyd v. Retail Equation,*

---

[7] But because the court "must afford the plaintiff an opportunity to respond to the perceived deficiencies in the complaint," dismissal of any claims related to the American Express Card Agreement will be **WITHOUT PREJUDICE**. *Zaslow v. Coleman*, 103 F. Supp. 3d 657, 664 (E.D. Pa. 2015) (citations omitted). Plaintiff is warned, however, that if he files an amended complaint arguing that he *did* accept the American Express Card Agreement by using his American Express card, the Court will compel arbitration of those claims along with his claims the Court will compel arbitration under the Visa Card Agreement.

*Inc.*, 2022 WL 18024204, at *7 (D.N.J. Dec. 29, 2022) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (holding that plaintiff's pleaded theory of liability necessarily implicated contract containing arbitration provision)). Indeed, "[p]recluding review of a complaint under the Rule 12(b)(6) standard simply because a plaintiff has avoided reference to an existing arbitration agreement would frustrate the purpose of the FAA: to facilitate expedited resolution of disputes where the parties to a contract have opted for arbitration." *Saleh v. Udemy, Inc.*, 2024 WL 1231343, at *3 (D.N.J. Mar. 21, 2024) (quoting *Sorathia v. Fidato Partners, LLC*, 2020 WL 5121473, at *3 (E.D. Pa. Aug. 31, 2020)).

Here, there is no question that Mr. Brown's claims are based upon an alleged breach of the Visa Card Agreement. [Compl. at 3 ("My accounts were closed [and] … Credit One Bank breached … our contract agreement.")] He does not dispute the existence or authenticity of the Visa Card Agreement attached to Defendant's Motion. How could he? He attaches the very same agreement to his own motion papers. [*Compare* Pl.'s Br., Ex. F, *with* Dasch Decl., Ex. C.][8] Nor does he contend that his claims arise out of a different agreement. Thus, the undisputedly authentic Visa Card Agreement is integral to and explicitly relied upon in the Complaint such that the

---

[8] It is clear that the agreement he attached to his opposition papers is the Visa Card Agreement rather than the American Express Card Agreement. [Visa Card Agreement at 8 ("Transactions in Foreign Currencies: If you make a transaction at a merchant that settles in a currency other than U.S. dollars, …*Visa Incorporated* will convert that charge into a U.S. Dollar amount.") (emphasis added); *compare also with* American Express Card Agreement at 8 ("Transactions in Foreign Currencies: If you make a transaction at a merchant that settles in a currency other than U.S. dollars, *American Express* will convert that charge into a U.S. Dollar amount.") (emphasis added).]

Court can properly consider it under a Rule 12(b)(6) standard. *See In re Burlington Coat Factory*, 114 F.3d at 1426 (court may consider a undisputedly authentic documents "integral to" or "explicitly relied upon" in the complaint without converting the motion to dismiss into one for summary judgment); *Fuller v. Rozlin Fin. Grp., Inc.*, 2020 WL 5036215, at *2 (D.N.J. Aug. 26, 2020) (applying motion to dismiss standard because plaintiff claimed a breach of agreement with defendant, even though plaintiff did not attach agreement to the complaint). Plaintiff has offered no competing evidence to the contrary. *Saleh*, 2024 WL 1231343, at *3 ("[W]here, as here, a contract is integral to [the plaintiff's] allegations … and no competing evidence has been proffered by [the plaintiff], a motion to dismiss standard applies.") (citing *Guidotti*, 716 F.3d at 773–75).

### C. The Court Will Compel Arbitration of Plaintiff's Claims Under the Visa Card Agreement

The FAA embodies a liberal federal policy favoring arbitration and "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); 18 U.S.C. § 4. For a court to compel arbitration under the FAA, it must find that "(1) there is an agreement to arbitrate; and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009). When performing this inquiry, the Court applies "ordinary state-law principles that govern the formation of contracts." *Kirleis v. Dickie, McCamey & Chilcote*, 560 F.3d 156, 160 (3d Cir. 2009).

13

1. *The Parties Agreed to Arbitrate Under the Visa Card Agreement*

The Visa Card Agreement unquestionably contains an agreement to arbitrate.[9] In relevant part, it provides that:

*Arbitration Agreement*

> PLEASE READ CAREFULLY—IMPORTANT—AFFECTS YOUR LEGAL RIGHTS
>
> This agreement to arbitrate provides that you or we can require controversies or disputes between us to be resolved by BINDING ARBITRATION. You have the right to REJECT this agreement to arbitrate by using the procedure explained below.
>
> If you do not reject this agreement to arbitrate, you GIVE UP YOUR RIGHT TO GO TO COURT and controversies or disputes between us will be resolved by a NEUTRAL ARBITRATOR INSTEAD OF A JUDGE OR JURY, using rules that are simpler and more limited than in a court. Arbitrator decisions are subject to VERY LIMITED REVIEW BY A COURT. Arbitration will proceed INDIVIDUALLY CLASS ACTIONS AND SIMILAR PROCEDURES WILL NOT BE AVAILABLE TO YOU.
>
> **Agreement to Arbitrate**: You and we agree that either you or we may, without the other's consent, require that controversies or disputes between you and us …, be submitted to mandatory, binding arbitration.

[Visa Card Agreement; Pl.'s Br., Ex. F.]

Under New Jersey law, a "cardholder's use of the credit card alone is sufficient in proving that a valid contract compelling arbitration exists between the parties." *Ellin*

---

[9] And unlike with the American Express Card Agreement, Plaintiff accepted the terms and conditions of the Visa Card Agreement by using his Visa credit card. His Complaint alleges that he incurred charges on his Visa card. [*See generally* Compl.] Therefore, he used the Visa card and accepted the terms and conditions of its Visa Card Agreement. [Visa Card Agreement at 2 ("You accept this Agreement when you use the Account.").]

*v. Credit One Bank*, 2015 WL 7069660, at *3 (D.N.J. Nov. 13, 2015) (collecting cases). Plaintiff accepted the terms and conditions of the Visa Card Agreement, including its arbitration agreement by using the card. [Visa Card Agreement at 2 ("You accept this Agreement when you use the Account"); Compl. at 3 (alleging that Plaintiff incurred charges on his credit card; Dasch Decl., Ex. D (Plaintiff's monthly card statements demonstrating use of the card).] Plaintiff could have rejected the Visa Card Agreement by following the procedure outlined in the Agreement by providing written notice of his rejection of the arbitration agreement to Credit One within 45 days of accepting the terms and conditions of the Visa Card Agreement. [Visa Card Agreement at 8.] He admits that he did not. [Pl.'s Br. at 1–2.]

      Plaintiff argues only that the Visa Card Agreement is "deceptive and misleading," including because it is "buried deep" in the Visa Card Agreement. [*See* Pl.'s Br. at 1–2.] These arguments challenge the validity or enforceability of the arbitration agreement. But the arbitration agreement contains a delegation provision providing that the arbitrator—as opposed to a court—shall resolve any "controversies or disputes about the validity, enforceability, coverage, meaning, or scope of this agreement to arbitrate[.]" [Visa Card Agreement at 6–8.] A delegation provision "is an agreement to arbitrate threshold issues concerning the arbitration agreement" including the validity of the agreement. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69 (2010). "[P]arties can agree to arbitrate [these] gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy[,]" *id*. at 69–70, so long as the delegation is

15

"clear and unmistakable[.]" *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 527, (2019) (citation and internal quotation marks omitted); *Singh v. Uber Technologies, Inc.*, 939 F.3d 210, 228 (3d Cir. 2019) (holding that "where the FAA is held to apply," all questions subject to delegation clause were for arbitrator to decide, including whether parties' dispute fell within scope of arbitration agreement). The Court finds that the arbitrability delegation was clear and unmistakable. "New Jersey law requires that 'a consumer contract … be written in a simple, clear, understandable and easily readable way'" that includes plain language. *Morgan v. Sanford Brown Inst.*, 225 N.J. 289, 310, 137 A.3d 1168, 1181 (2016) (finding that agreement containing arbitration and delegation clauses was not sufficiently "clear and understandable" to be enforceable); *see also Atalese v. U.S. Legal Servs. Group, L.P.*, 99 A.3d 306, 314 (N.J. 2014) ("Arbitration clauses—and other contractual clauses—will pass muster when phrased in plain language that is understandable to the reasonable consumer.") Here, the arbitrability delegation was written in plain language that an ordinary consumer would understand and is therefore clear and unmistakable under New Jersey law. Plaintiff did not challenge the lawfulness of the delegation clause. *Young*, 2024 WL 4509767, at *6 (challenges to scope, validity, or enforceability of arbitration agreement are for the arbitrator to decide where arbitration agreement includes delegation clause and plaintiff fails to challenge delegation clause). Thus, the Court finds that the parties agreed to arbitrate under the Visa Card Agreement.

### 2. *Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement*

Plaintiff's claims are all covered by the Visa Card Agreement. He alleges that Credit One breached its "fiduciary dut[ies]", and the Card Agreement itself as well as various federal laws when it rejected his tendered "payment" and closed his account. [*See* Compl. at 3.] The arbitration agreement provides that:

> Claims subject to arbitration include, but are not limited to, any controversies or disputes arising from or relating in any way to your Account; any transactions involving your Account; any disclosures made to you concerning your Account; any interest, charges, or fees assessed on your Account; any service(s) or programs related to your Account; and, if permitted by the rules of the arbitration forum, any collection of debt related to your Account. Claims also include controversies or disputes arising from or relating in any way to advertising, solicitations, or any application for, approval of, or establishment of your Account. Claims subject to arbitration include any controversies or disputes based on any theory of law, whether contract, tort, statute, regulation, common law, or equity, or whether they seek legal or equitable remedies.

[Visa Card Agreement at 6–8.] The broad scope of coverage is plainly enough to cover each claim Plaintiff purports to bring. *Century Indem. Co.*, 584 F.3d at 556 (noting that, because the scope of the arbitration clause in question "is broad[,]...the presumption of arbitrability applies to it"); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 20 (1991) ("FAA manifests a liberal federal policy favoring arbitration[.]"). Indeed, if "the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that [an] order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the

arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986) (internal quotation and citation omitted). Plaintiff has offered no argument to the contrary.

V. **CONCLUSION**

Because the Court finds that a valid agreement to arbitrate exists and that the dispute falls within the scope of that agreement, the Court will **GRANT** Defendant's Motion, in part, related to any claims arising under the Visa Card Agreement and further **STAY** those claims in this proceeding pending the outcome of arbitration.[10] Plaintiff's claims arising under the American Express Card Agreement will be **DISMISSED WITHOUT PREJUDICE**. An accompanying Order shall issue.

**October 21, 2024**  
Date

s/Renée Marie Bumb  
RENÉE MARIE BUMB  
Chief United States District Judge

---

[10] Credit One requested that the Court stay this action pending arbitration. [Docket No. 8-1 at 1.] "[W]hen [a] dispute is subject to arbitration and a party requests a stay pending arbitration," Section 3 of the Federal Arbitration Act requires courts to issue a stay rather than dismissing the case. *Smith v. Spizzirri*, 601 U.S. 472, 474 (2024); *Singh v. Uber Technologies Inc.*, 235 F. Supp. 3d 656, 676 (D.N.J. 2017) (quoting *Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3d Cir. 2004)) ("The Third Circuit has held that the plain language of § 3 of the FAA 'affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration.'").